UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JAMES MURRAY, ) | |
| ) | |
| Plaintiff, ) | Civil No: 11-162-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| FRED PENNINGTON, ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court are the Cross-Motions for Summary Judgment filed by the Plaintiff James Murray and the Defendant Fred Pennington. In their respective motions, the parties assert they are entitled to judgment as a matter of law because there are no genuine issues of material fact. For the reasons stated below, Murray's Motion for Summary Judgment will be DENIED, and Pennington's Motion for Summary Judgment will be DENIED in part, and GRANTED in part.

**I.**

This case arises out of an incident that occurred on June 21, 2010. [R. 1, at 2.] Murray was driving on a public road in Laurel County, Kentucky. [*Id.*] Pennington, while on duty as a Kentucky State Police officer, stopped Murray's vehicle after he suspected Murray had improperly passed another vehicle. [*Id.*] During the stop, Pennington ordered Murray to exit his vehicle. [*Id.*] Some point after Murray got out of his vehicle, Pennington made a sweeping motion with one of his legs that knocked Murray's legs from underneath him causing him to fall to the ground. [*Id.* at 3; R. 26, at 2.] Murray was then arrested for reckless driving and taken to Laurel County Detention

1

Center where he stayed for approximately 11 hours. [R. 1, at 3.] After his release from the detention center, Murray sought medical attention and discovered he had suffered broken ribs as a result of the fall caused by the leg sweep. [*Id.*] There are other facts pertinent to this matter, but they are in dispute and will be outlined in more detail below.

## II.

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285

2

F.3d at 424 (citing *Celotex*, 477 U.S. at 324).  Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact.  It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).  Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).  In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party.  *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

### III.

### A.

In his Complaint, Murray asserts four federal claims and several state claims against Pennington. [R. 1.]  The federal claims alleged against Pennington consist of excessive force (Count 1), unlawful arrest (Count 2), unlawful detention and confinement (Count 3), and cruel and unusual punishment (Count 4) all in violation of 42 U.S.C. § 1983. [*Id.* at 3.]  The state claims include false imprisonment, assault, battery, intentional infliction of emotional distress, negligence, and gross negligence. [*Id.* at 3-4.]  Pennington opposes several of these claims on substantive grounds and on the basis that he is entitled to qualified immunity and state immunity.

**1.**

Before the Court addresses the issues as they relate to qualified immunity, it must first resolve Pennington's assertion that Murray's claims fail because of insufficient service of process.

Murray served Pennington by way of summons and complaint through certified mail at KSP Post 11, London, Kentucky. [R. 3-3] Murray filed a return of service with this Court, but it did not indicate that Pennington endorsed the certified mail return receipt for the summons and complaint. [*Id.* at 4.] Instead, it reflected that the return receipt was signed by Patsy Young. [*Id.*] Pennington asserts he explicitly preserved in his Answer the right to assert insufficient service of process as a defense. [R. 5, at 8; R. 26, at 6.]

Federal Rule of Civil Procedure 4(e) sets the proper way to serve an individual defendant. An individual may be served by following state procedures or by delivering a copy of the summons and complaint to the individual personally; by "leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or by delivering a copy "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1)-(2).

Kentucky Rules of Court 4.01(a) authorizes service upon an individual defendant via certified mail. Specifically, the rule provides that a return receipt shall be proof of the time, place and manner of service. CR 4.01(a). Further, service on an authorized representative constitutes service on a government official, so long as United States postal regulations permit it. CR 4.01(a). Moreover, CR 4.04 grants that personally

4

delivering a copy of the complaint to an agent authorized by appointment or by law to receive such documentation is appropriate. CR 4.04.

Here, Pennington is not entitled to dismissal on this issue. He cites two cases, *Simon v. Lexington Fayette Urban County Government*, 2008 WL 1991710, *2 (Ky. App. 2008) (unpublished), and *Douglas v. University of Kentucky Hospital,* 2008 WL 2152209, * 2-3 (Ky. App. 2008) (unpublished), but fails to explain how their holdings are apropos to this matter. The resolution of this issue hinges on whether Patsy Young was an "authorized representative." But no argument is proffered by Pennington discrediting Patsy Young's status as such. Absent further explanation, the Court will not dismiss on this ground.

**2.**

Turning to Pennington's other arguments, he first asserts that he is entitled to qualified immunity on Murray's federal claims. [R. 26, at 7.] "[T]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A two-step analysis is utilized in evaluating claims of qualified immunity. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was the right at issue "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "The burden of convincing a court that

5

the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Qualified immunity analysis for federal claims is "essentially identical to the qualified immunity inquiry under [Kentucky] state law." *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004); *see also Yanero v. Davis*, 65 S.W.3d 510, 521-23 (Ky. 2001).

Pennington asserts that he is entitled to summary judgment as to Murray's unlawful arrest claim. According to Pennington, Murray was arrested for reckless driving based on "[his] first-hand observation of Murray exceeding the speed limit and illegally passing another vehicle on Parker Road." [R. 26, at 11.] Pennington argues as further proof that Murray resolved the reckless driving charge by way of agreed disposition with the Commonwealth. [R. 26, at 11.] He charges that such a resolution is "fatal to any challenge of probable cause on grounds of judicial estoppel." [*Id.*] Pennington asserts, "[Murray] is bound by his decision to achieve an agreed disposition of the traffic offense in exchange for completion of an online driving course. [R. 26, at 12.] Murray, however, contends "Pennington never articulated any facts to justify an arrest over the issuance of a traffic citation." [R. 31, at 7.] Murray then asserts, "[e]ven in the light most favorable to the Defendant, [Pennington] articulated only a basis that the violations of speeding and improper passing had been committed."

6

"[A]n arrest constitutes an unreasonable seizure in violation of the Fourth Amendment" when one is arrested without probable cause. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) (citing another source). Although Pennington asserts that he is shielded from liability by qualified immunity, because the facts must be viewed in a light most favorable to Murray, Pennington is not granted summary judgment as to this claim.

Probable cause is determined by "whether, at the time of the arrest, the 'facts and circumstances within [the arresting officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (first alteration in original)). Otherwise stated, "[a] police officer has probable cause if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citations omitted). Probable cause does not require "any showing that [an officer's] belief [is] correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Nevertheless, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment

7

inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir.1996) (citation omitted).

Pennington is denied summary judgment as to this claim because the constitutionally protected right to be free from arrest without probable cause existed before 2010 and the material facts surrounding this incident are in dispute. Murray was arrested for reckless driving, which according to *United States v. Lopez¸* 567 F. 3d 755, 757 (6th Cir. 2009) is an arrest worthy offense. Nevertheless, Murray submits "he is not the individual who Trooper Pennington witnesse[d] speeding and driving recklessly." [R. 31, at 3.] Although Pennington avers Murray admitted passing a car on Parker Road, the Court's review of Murray's deposition testimony does not comport with this assertion. When asked by opposing counsel whether he "remember[ed] passing any vehicles on Parker Road", Murray responded, "[a]bsolutely not," and remarked that he told Pennington at the scene of the traffic stop that he had passed a vehicle because of "intimidation." [R. 28-3, at 1.] Moreover, the agreed disposition that is referred to by Pennington is not available in the record, and therefore will not be considered by the Court. Because there is conflicting evidence as to whether probable cause existed to arrest Murray, the Court is not inclined to grant summary judgment.

Next is Pennington's argument that he is entitled to summary judgment as to Murray's excessive force claim. According to Pennington, "using a leg sweep to subdue a suspect the officer believes is noncompliant is consistent with the grant of qualified immunity in this Circuit." [R. 26, at 14.] He also asserts the leg sweep was appropriate given the presence of traffic. [*Id.* at 15.] Accordingly, Pennington asserts that the force

8


used was either constitutionally reasonable or, in the alternative, did not violate Murray's clearly established rights. [*Id.*]

Murray argues that the "reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989), leaves no room for the excessive force employed here." [R. 31, at 8.] After reviewing Pennington's deposition, Murray asserts Pennington never felt like he was in danger. [*Id.*] Murray opines that under the facts in this case, "it can hardly be said that a reasonable officer would not have recognized his actions as a violation of [] Murray's clearly established constitutional rights." [*Id.*]

In determining whether a right is clearly established, courts are to ask if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This circuit has held that nonviolent and non-resistant arrestees are entitled "to be free from unnecessary pain knowingly inflicted." *Zantello v. Shelby Twp.*, 277 F. App'x 570, 574 (6th Cir. 2008) (quoting *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005); *see also Carpenter v. Bowling*, 276 F. App'x 423, 426-27 (6th Cir. 2008) (citing additional cases). Such a right existed, at least, as long ago as 2005, and this case arose in 2011. [R. 1 at 3.] Thus the law in this circuit clearly establishes that Murray had a right to be free of unnecessary pain caused by an officer.

Because the law was clearly established, the constitutional dimensions of unreasonable force must be analyzed in relation to the facts. A balancing test has been promulgated to determine whether unreasonable force is used: "the nature and quality of the intrusion on the individual" is weighed against "the countervailing governmental interests at stake." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Graham*

9

*v. Connor*, 490 U.S. 386, 396 (1989)). The "underlying intent or motivation of the officer" is not relevant to this analysis, *id*. (citing *Dunagin v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)), and Pennington's decision to use force is evaluated "from the perspective of an objective officer." *Id.* (citing *Dunagin*, 390 F.3d at 493). Also, Murray's actions can be assessed when determining reasonableness. *See id.* at 456 (citing *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)). Factors such as if the seized party is resisting arrest or if that individual poses a danger to the officer or others have been identified as useful aids, but ultimately, the force used in the seizure should be examined considering the totality of the circumstances. *Id.* at 455.

  Considering the factual dispute between Murray and Pennington as to what brought upon the leg sweep, it is evident the Court cannot rule on this claim as a matter of law. Two different images exist regarding whether the use of the leg sweep was reasonable. In one image, Pennington thought Murray "was about to flee or resist arrest," and therefore needed to utilize the leg sweep to detain him. [R. 26, at 14.] Further, he wanted to "prevent the possibility of having to pursue Murray on foot in the vicinity of traffic." [*Id.*] In the other image, according to Murray, Pennington decided to use the sweep maneuver after he had already cuffed Murray and had threatened to physically harm him. [R. 30, at 3.] Although the record does not clearly reflect Murray's recounting of the ordeal, there is still more than a "scintilla of evidence" to suggest the leg sweep was not reasonable. Besides Pennington's testimony that Murray "jerked away at some point" [R. 28-2 at 8] there is no proffered evidence that Murray was attempting to flee or that he was in any way threatening.

Thus the Court, then, is left with factual disputes over the reasonableness and the amount of force that was used. "When the legal question is completely dependent upon which view of the facts is accepted by the jury, the District Court cannot grant a defendant police officer immunity from a[n] [unreasonable] force claim." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (internal quotation marks omitted); *see also Zar v. Payne*, 760 F. Supp. 2d 779, 791 (6th Cir. 2011) (citing *Sova*). "This is especially true considering that the District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment." *Sova*, 142 F.3d at 903. Accordingly, "the reasonableness of the use of force is the linchpin of the case," and that decision is subject to a jury's determination. *Id.* Qualified immunity is thus subject to the version of the facts the jury chooses to believe and liability cannot be determined by the Court. Therefore in this particular case, qualified immunity is subject to the version of the facts the jury chooses to believe and liability cannot be resolved by the Court at this juncture.

As to Murray's fourth claim, wherein he asserts he was subjected to cruel and unusual punishment, Pennington avers Murray never asked for medical care following his arrest, and Pennington did not observe any physical injury to Murray. [*Id.* at 16.] He claims his testimony is bolstered by Laurel County Detention Center employees who also did not observe any injury to Murray. [*Id.*] Finally, Pennington contends Murray's allegation of injury does not "meet the constitutional standard of injury of such severity as to require medical attention. [*Id.* at 16-17.]

Murray does not address this argument. [R. 28; R. 31.] The Sixth Circuit has explained how a court should proceed in the face of such a situation: "[I]ssues adverted to

11

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (alterations in original) (quoting another source). Here, other than asserting the claim in Count 4 of his Complaint, Murray does not address the issue. The Court, therefore, will enter judgment for Pennington on this Count.[1]

**3.**

Turning to Murray's state claims, Pennington argues they fail as a matter of law. [R. 26, at 17.] With respect to the assault and battery charges, Pennington claims that based on the pertinent facts addressing the excessive use of force claim, he is entitled to judgment as a matter of law. [*Id.*]

The Court will deny Pennington's motion for summary judgment as to these claims. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Intent is an element that must be proven, but actual damages do not have to be shown by the plaintiff to satisfy the elements of these claims. *Id*. Murray's description of his encounter with Pennington satisfies the above elements, and intentional physical contact between the parties is not in dispute. [R. 1, at 3; R. 26, at 2.] Based on those facts, a reasonable jury could find for Murray.

With respect to Murray's false arrest claim, Pennington asserts that if the federal unlawful seizure claim fails, then the false arrest claim must fail as well. [R. 26, at 17.]

---

[1] This rationale also applies to Murray's claims for unlawful detention and confinement (Count 3), negligence (Count 10), and gross negligence (Count 11). Murray pleads all three in his Complaint, [R. 1, at 8,] but fails to address them in either his response to Pennington's motion or his own Motion for Summary Judgment. Therefore, these claims will be waived.

12

Unfortunately for Pennington's argument, the federal unlawful seizure claim has survived, and if his logic is sound, the inverse must be true too. In Kentucky, a claim for false arrest requires the restraint to be undertaken without lawful justification or authority. *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001). For the reasons set forth under the analysis of the unlawful arrest claim, this argument must fail too.

He also argues under Kentucky's qualified immunity standard that his actions were discretionary in nature. Hence, he submits, Murray's claims cannot succeed. [*Id.* at 19.] Public officers, when sued in their individual capacities for performing discretionary functions within the scope of their authority, are protected from "damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W. 3d 510, 522 (Ky. 2001). Because the evidence shows that Pennington was performing a discretionary function within his scope of authority, to overcome qualified immunity Murray must show that Pennington was not acting in good faith. *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008) (quoting *Yanero*, 65 S.W.3d at 523.) To prove that Pennington did not act in good faith (i.e. he acted in bad faith), Murray must show a "violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523 (citation omitted). The factual dispute on which the excessive force qualified immunity determination rests prevents the Court from rendering a decision on this claim. The jury's decision about which facts are more

believable is critical to this determination. Therefore, the Court must deny Pennington summary judgment as it relates to this issue.

Finally, he asserts Murray's intentional infliction of emotional distress (IIED) claim fails as a matter of law. [*Id.* at 19.] He argues Murray's allegations fall under the traditional tort rubric of false arrest and battery, and therefore he cannot also attempt to recover under IIED. [*Id.*] An IIED claim consists of four elements: (1) "plaintiff must show that defendant's conduct was intentional or reckless"; (2) "that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency"; (3) "that a causal connection exists between the conduct complained of and the distress suffered"; (4) "and that the resulting emotional distress was severe." *Lewis v. Laurel Cnty. Sheriff's Dep't*, 2011 WL 3475370, at *8 (E.D. Ky. Aug. 8, 2011) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480-81 (Ky. Ct. App. 2001)). This tort is only cognizable in two instances because Kentucky law has identified it as a "gap-filler." An IIED claim is available if "a more traditional tort cannot provide redress for the alleged conduct." *Green v. Floyd Cnty.*, 2011 WL 978148, at *2 (E.D. Ky. Mar. 17, 2011). That is not the case here as, at a minimum, the torts of assault—the threat of touching—and battery—an unwanted touching—are available to Murray, *See Gibson v. Slone*, 2011 WL 2009815, at *3 (E.D. Ky. May 23, 2011); *Grace v. Armstrong Coal Co.*, 2009 WL 366239, at *3 (W.D. Ky. Feb. 13, 2009) (and cases cited therein), and he has pleaded them. An IIED claim can also be recognized if "the defendant[] solely intended to cause extreme emotional distress." *Green*, 2011 WL 978148, at *2. Murray's claim fails to meet this standard and does not address this claim in any of his substantive filings. Accordingly, Pennington is granted summary judgment as to this claim.

**B.**

Turning to Murray's Motion for Summary Judgment, he argues that Pennington did not have probable cause to effectuate an arrest. [R. 28, at 5.] Murray asserts that he was not speeding, and that Pennington never articulated any facts that would give rise to the arrest. [*Id.*] According to Murray, Pennington only provided a basis for a speeding, and an improper passing charge. [*Id.*] Without more, charges Murray, Pennington did not have probable cause for an arrest pursuant to a reckless driving charge. [*Id.*]

Pennington contends Murray admitted he passed another vehicle on Parker Road prior to his arrest. [R. 30, at 2.] According to Pennington, Parker Road is marked with a double-yellow line. [*Id.*] He further contends that "[i]mproper passing in a no-passing zone . . . is a traffic violation under Kentucky law." [R. 30, at 2.] He repeats the point made in his motion that "the reckless driving charge was not resolved in Plaintiff's favor. Rather, Plaintiff agreed to complete an online traffic safety course and pa[id] a fee in exchange for dismissal of the charge." [*Id.*] He further asserts that a plaintiff cannot succeed on a Fourth Amendment claim for unlawful arrest based on the allegation that he was arrested for an offense for which state law does not permit a custodial arrest.

Ultimately, the issue of probable cause to arrest Murray rests on facts that must be decided by a jury. As was stated previously, the facts surrounding the arrest are in dispute. Murray claims he was not speeding and he did not pass any vehicles in a no-passing zone, while Pennington claims he rightfully arrested Murray for reckless driving. The fact that Murray agreed to complete an online traffic safety course and pay a fee in exchange for dismissal of the charge against him makes it more likely that he committed a traffic offense. In light of these details, Murray is not entitled to summary judgment.

15

Murray next claims that even if probable cause existed, the physical force used against plaintiff was not justified. [*Id.* at 6.] To bolster his argument, Murray cites Pennington's deposition testimony wherein he states "I don't think I ever at any point said, you are under arrest." [*Id.*] Murray posits, "[i]f the testimony from Pennington is true and accurate, the Plaintiff was not only free to leave, but was not given the impression he was going to be arrested at any time." [*Id.*] Hence, according to Murray, the leg sweep maneuver was unreasonable because Murray could not have resisted arrest if "[Pennington] never told Murray he was under arrest." [*Id.* at 6-7.] He also cites to the KSP Manual, which he contends does not condone Pennington's use of the leg sweep tactic. [*Id.* at 8.] In response, Pennington asserts that his observations at the scene of the arrest "more than justified his belief that [Murray] would not willingly submit to arrest, and may have been preparing to pull away or flee the scene." [*Id.* at 3.]

Likewise, Murray is not entitled to summary judgment as to this claim. Pennington may very well have acted reasonably in his use of the leg sweep maneuver if he believed Murray was attempting to flee. The Court "must remember to consider the reasonableness of the officer at the scene . . . and keep in mind that officers must often make split-second judgments because they are involved in 'circumstances that are tense, uncertain, and rapidly evolving.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 174 (6th Cir. 2004) (citing *Graham v. Connor,* 490 U.S. 386, 396-97 (1989)). Pennington may very well have attempted the leg sweep maneuver instead of risk pursuing Murray in the vicinity of traffic. Without overwhelming evidence to support Murray's version of the facts, the Court will not grant summary judgment in his favor.

16

**C.**

As a result of the foregoing analysis, Pennington is entitled to summary judgment as to Counts 4 (cruel and unusual punishment) and 9 (IIED). Further, because Counts 3 (unlawful detention and confinement); 10 (negligence); and 11 (gross negligence) were only raised in a perfunctory manner without serious effort to establish their elements, they are deemed waived by Murray. The following Counts are still present for trial: excessive force (Count 1); unlawful arrest (Count 2); false imprisonment (Count 6); assault (Count 7); and battery (Count 8).

**IV.**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Murray's Motion for Summary Judgment [R. 28] is **DENIED**;

(2) Pennington's Motion for Summary Judgment [R. 26] is **DENIED in part and GRANTED in part** in accordance with the preceding paragraph;

(3) This is a **FINAL** and **APPEALABLE ORDER** and there is no just cause for delay[2]; and

(4) The Court will enter an appropriate judgment contemporaneously herewith.

This 3rd day of August, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[2] The Court finds that this partial grant of summary judgment should be immediately appealable because of two reasons. *See Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003); *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009). First, the adjudicated and unadjudicated claims have a close relationship: they arise from the same facts, involve the same counsel, and would undoubtedly be dependent on similar evidence. Furthermore, to delay an appeal could obligate the Court to consider the same issues two different times, harming judicial efficiency. Moreover, no obvious factors weigh in favor of delaying the parties from appealing this decision, were they so inclined.